OCT 21 2026 12:46
RCVD - USDC FLO SC

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

**Santana S. Collins,**
Plaintiff,

v.

**Wal-Mart Stores East, LP,**
Defendant.

Civil Action No.: ____________________

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION UNDER THE ADA**

JURY TRIAL DEMANDED

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

## I. PARTIES

1. Plaintiff Santana S. Collins is an adult resident of Chesterfield County, South Carolina. Plaintiff proceeds pro se.

2. Defendant Wal-Mart Stores East, LP operates Walmart Distribution Center #6073 at 160 W. Dove Sutton Road, Pageland, South Carolina 29728. At all relevant times, Defendant was Plaintiff's employer, employed at least fifteen employees, and was an employer within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(5).

## II. JURISDICTION, VENUE, AND ADMINISTRATIVE EXHAUSTION

3. This action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. This Court has federal-question jurisdiction under 28 U.S.C. § 1331.

4. Venue is proper in the District of South Carolina because the employment practices alleged in this Complaint occurred at Walmart Distribution Center #6073 in Chesterfield County, South Carolina. Chesterfield County is assigned to the Florence Division.

5. Plaintiff timely pursued administrative remedies with the United States Equal Employment Opportunity Commission ("EEOC") in Charge No. 436-2026-02921. The EEOC issued a Determination and Notice of Rights dated September 29, 2026. Plaintiff files this action within ninety days of receipt of that notice and will file the Notice of Rights as Exhibit A.

## III. FACTUAL ALLEGATIONS

6. Walmart hired Plaintiff on March 12, 2019. Plaintiff's permanent position was Grocery Loader, also identified in employment records as Loader/Wrapper or Truck Loader, at Distribution Center #6073, a physically demanding warehouse position.

7. Plaintiff sustained a work-related right shoulder injury in August 2024 and underwent right rotator-cuff surgery on August 20, 2025.

8. When Plaintiff returned to work in October 2025, Walmart knew that she had medical restrictions affecting her shoulder and neck and limiting the physical work she could safely perform. Those restrictions included sit-down work associated with her neck condition and, as later documented, limitations on prolonged bending, stooping, squatting, kneeling, twisting, pushing, and pulling.

9. On November 5, 2025, Plaintiff's orthopedic provider issued restrictions including a five-pound lifting limit for the right arm and no overhead activity. Plaintiff returned to the facility on November 7, 2025 and provided the restrictions to Walmart.

10. Beginning November 7, 2025, Walmart assigned Plaintiff painting work, including the break-room entrance and door frame and the perishable-side entrance and door frame. Plaintiff alleges that the original painting assignment required overhead reaching, prolonged standing, bending, squatting, and twisting, and that no chair or seated workstation was provided for that original door-and-frame work.

11. Plaintiff attempted the assignments because she wanted to remain employed and continue earning wages. In an effort to comply with the restrictions on her right arm, Plaintiff relied primarily on her left arm while painting; Plaintiff was not medically instructed to paint with her left arm only.

12. On or about November 13, 2025, Plaintiff reported to Human Resources that the painting was aggravating her shoulder and arms. Plaintiff alleges that Human Resources told her she would

need updated medical documentation specifically addressing painting before the assignment would be changed.

13. On December 5, 2025, Plaintiff was evaluated for swelling and inflammation involving the left elbow and was taken out of work for a period of time.

14. By December 15-16, 2025, Plaintiff's restrictions included a five-pound lifting limitation involving both arms, no pushing or pulling, no prolonged bending, stooping, squatting, kneeling, or twisting, and sit-down work only.

15. Plaintiff was medically released to return on January 5, 2026 and physically returned for her next scheduled shift on January 9, 2026. She completed remaining door-and-frame painting that weekend and was later assigned railing painting. Seating was provided for the later railing task, unlike the original door-and-frame painting.

16. On January 16, 2026, while performing the painting assignment, Plaintiff experienced increased right-shoulder pain, difficulty raising the arm, and an intense burning sensation. She left to seek medical attention.

17. Plaintiff contacted her orthopedic office through MyChart for guidance. The office directed her to contact her workers' compensation nurse case manager. Plaintiff contacted the case manager, who stated she would follow up with the orthopedic office. Plaintiff alleges she did not receive a further response before her January 28 appointment.

18. On January 23, 2026, Plaintiff underwent a right-shoulder MRI. The MRI documented severe supraspinatus tendinosis with partial-thickness bursal-surface tearing, moderate infraspinatus tendinosis, subacromial/subdeltoid bursitis, and other post-surgical abnormalities. The report did not identify a gross full-thickness re-tear.

19. On January 28, 2026, Plaintiff's orthopedic provider issued updated restrictions including no painting, desk work only, and no lifting greater than two pounds with the right arm. Walmart discontinued the painting assignment after receiving the express no-painting restriction.

20. Plaintiff alleges that the accommodation problem began before January 28 because Walmart already had her broader restrictions, including restrictions against overhead activity and prolonged physical activity, and Plaintiff had already reported that the painting assignment was aggravating her condition.

21. In early February 2026, Walmart assigned Plaintiff to observe a freezer wrapping machine in the perishable area. Plaintiff alleges that no seat was provided. She further alleges that the limited space and heavy workplace traffic made sitting at that location difficult and unsafe while performing the observation task.

22. After spending several hours in the cold area, Plaintiff reported to management that the extreme cold was aggravating her severely inflamed surgical shoulder and causing throbbing and increased pain. Plaintiff alleges that management again told her she needed more specific medical documentation before the assignment would be changed.

23. On February 25, 2026, Plaintiff's orthopedic provider updated her restrictions to include no exposure to extreme hot or cold temperatures, no painting, desk work only, and no lifting greater than two pounds with the right arm. Walmart stopped assigning Plaintiff to the freezer wrapping machine after receiving the temperature restriction.

24. After the freezer assignment ended, Plaintiff's temporary light-duty tasks became inconsistent. At different times she wiped and changed paper logos in break-room napkin holders, removed and re-stapled CRO forms to envelopes, waited in the break room for work, observed a wrapping machine on the dry side, walked to different departments or managers to ask whether work was available, and performed other limited tasks.

25. Plaintiff alleges that repetitive motion aggravated her right shoulder and that prolonged standing and walking aggravated her neck and shoulder symptoms. She alleges that having her arm hanging for extended periods caused increased aching and that flare-ups sometimes took several days to return to baseline.

26. Plaintiff alleges that management already possessed her medical restrictions, but she was not given a written accommodation plan identifying which day-to-day tasks were considered compatible with those restrictions. Plaintiff asked for a list of possible light-duty tasks that she could take to her provider for review and was told that no such list existed because tasks could change from day to day.

27. On March 10, 2026, Plaintiff underwent a Functional Capacity Evaluation. The FCE classified her demonstrated physical-demand level as sedentary and found that she demonstrated approximately 43.9 percent of the physical demands of the Truck Loader job.

28. During the accommodation period, Plaintiff received attendance points associated with medically related absences and periods in which she was seeking evaluation or updated restrictions. Plaintiff reported the attendance and accommodation concerns to the Distribution Center's general manager, and two attendance points were later removed.

29. On April 10, 2026, Plaintiff received permanent restrictions including no lifting greater than ten pounds with both shoulders, no carrying greater than eight pounds with both arms, and no lifting greater than two pounds above shoulder level.

30. Plaintiff continued reporting to work after the permanent restrictions were issued and remained willing to work within her medical limitations. Plaintiff alleges that her temporary assignments remained inconsistent and that Walmart did not provide one stable assignment that effectively accommodated all of the restrictions known to the company.

31. Plaintiff repeatedly notified Human Resources in writing by email regarding accommodation concerns, disputed attendance points, and later the reassignment process. Plaintiff alleges that multiple emails seeking assistance or updates received no response. Plaintiff further alleges that the lack of responses contributed to a breakdown in the interactive accommodation process.

32. In June 2026, Plaintiff went on medical leave. Walmart later informed Plaintiff that she would be placed on a job-search/reassignment leave because her permanent restrictions prevented her from returning to the heavy-duty Loader position.

33. A July 2026 accommodation letter stated that Walmart had not identified a same- or lower-pay-grade position at the distribution center that fit Plaintiff's permanent restrictions. Walmart placed Plaintiff on job-search leave beginning July 11, 2026.

34. On October 1, 2026, Walmart sent Plaintiff a letter confirming that the job-search leave was an accommodation and would end on October 8, 2026. The letter directed Plaintiff to work with management or her People Partner regarding next steps and warned that failure to exercise leave options or return to an open position for which she was qualified could result in voluntary termination. Plaintiff requested an extension of her reassignment leave. As of October 20, 2026, the request remained pending, and Plaintiff had not received a decision from Walmart.

35. Plaintiff has stated in writing to Human Resources that she is not resigning, remains willing and available to work, and is willing to accept an existing vacant position for which she is qualified and whose actual duties fit her permanent medical restrictions. As of the filing of this Complaint, Plaintiff alleges that Walmart has not offered her any such position or identified to her the specific positions searched or considered during the job-search leave.

36. Plaintiff does not ask Walmart to create a new position or to return her to her former heavy-duty Loader position without regard to her restrictions. She seeks effective accommodation of her known limitations and, where appropriate, consideration for an existing vacant position for which she is qualified and whose essential functions she can perform, with or without reasonable accommodation.

37. As a result of the events described above, Plaintiff alleges loss of regular wages and employment benefits, physical pain and aggravation, emotional distress, inconvenience, and other compensable harm.

## IV. COUNT I - DISABILITY DISCRIMINATION / FAILURE TO ACCOMMODATE UNDER THE ADA, 42 U.S.C. § 12112(a), (b)(5)(A)

38. Plaintiff incorporates paragraphs 1 through 37 as if fully set forth here.

39. At the relevant times, Plaintiff had physical impairments that substantially limited one or more major life activities, including lifting, reaching, and performing manual tasks, and/or had a record of such impairments. Walmart had notice of Plaintiff's medical limitations and restrictions.

40. Plaintiff alleges that she was a qualified individual under the ADA and sought to remain employed through reasonable accommodation. During the temporary-accommodation period, Plaintiff remained willing and able to perform duties that were structured consistently with her documented limitations. After her restrictions became permanent, Plaintiff sought consideration for an existing vacant position for which she was qualified and whose essential functions she could perform, with or without reasonable accommodation.

41. The ADA requires a covered employer to provide a reasonable accommodation to a qualified individual with a disability unless doing so would impose an undue hardship. Reasonable accommodation may include modification of work practices or schedules, job restructuring, and reassignment to a vacant position when appropriate.

42. Plaintiff alleges that Walmart failed to provide an effective reasonable accommodation during material portions of the accommodation process, including by assigning or maintaining temporary duties that did not effectively account for limitations Walmart already knew about, by requiring increasingly specific medical documentation after Plaintiff reported that assignments were aggravating her condition, by failing to respond to multiple written Human Resources communications concerning accommodation and reassignment, and by failing to adequately identify and offer a suitable vacant reassignment after her restrictions became permanent.

43. Plaintiff alleges that Walmart's acts and omissions constituted disability discrimination and failure to reasonably accommodate in violation of 42 U.S.C. § 12112(a) and § 12112(b)(5)(A).

44. As a direct and proximate result, Plaintiff alleges that she suffered lost wages and benefits, emotional distress, physical pain and aggravation, inconvenience, out-of-pocket losses and medical expenses to the extent recoverable and supported by evidence, and other damages available under applicable law.

## V. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and award relief authorized by law, including:

- Back pay and lost employment benefits;
- Front pay or appropriate equitable relief, including reinstatement or reassignment if available and appropriate;
- Compensatory damages for emotional distress, inconvenience, physical pain and other nonpecuniary or pecuniary losses to the extent permitted by law;
- Punitive damages to the extent permitted by law and supported by the evidence;
- Prejudgment and post-judgment interest as allowed by law;
- Costs of this action and reasonable attorney's fees if recoverable under applicable law; and
- Any other legal or equitable relief the Court deems just and proper.

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Santana Collins

Santana S. Collins, Pro Se Plaintiff
2609 Douglas Mill Rd

Ruby, SC 29741
Telephone: (843) 517-3802
Date: 10-21-2026